```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| RUTH FADDISH, Individually and as executrix of the estate of JOHN FADDISH, deceased, | : : : : : | CONSOLIDATED UNDER MDL 875 |
| Plaintiff, | : : | CIVIL ACTION NO. 09-70626 |
| v. | : : : : | Transferred from the Southern District of Florida |
| CBS CORPORATION, et al., | : : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                               OCTOBER 20, 2010

Before the Court is the report and recommendation ("R&R") issued by Chief Magistrate Judge Thomas J. Rueter, and joined by Magistrate Judges David R. Strawbridge and Elizabeth T. Hey ("the Panel"), and defendant CBS Corporation's objections thereto. The Panel recommends that the Court deny CBS Corporation's Motion for Summary Judgment.[1] Federal jurisdiction in this case is based on diversity of citizenship under 28 U.S.C. § 1332. The issue

---

[1] This case was referred by Order of the Presiding Judge of MDL-875 to a panel of three magistrate judges pursuant to MDL-875 summary judgment procedures regarding issues of causation (product identification), successor liability and settled issues of state law. (See MDL-875 summary judgment procedures, available at www.paed.uscourts.gov/mdl1875y.asp; see also Faddish v. Buffalo Pumps, Inc., et al., 09-706265, doc. no. 156. In the instant case, the R&R was filed after all parties were afforded an opportunity to brief all relevant summary judgment issues and lengthy argument in front of the Panel.

1

before the Court revolves around product identification.

I. BACKGROUND

This case is part of MDL-875, the consolidated asbestos products liability multidistrict litigation pending in the Eastern District of Pennsylvania. The instant claims are based on failure to warn causes of action under Florida law. (Compl. ¶5.)

Plaintiff's husband and the injured party in the instant case, John Faddish ("Mr. Faddish"), was a serviceman in the U.S. Navy. Mr. Faddish served aboard the U.S.S. Essex from 1958-1961. (Suppl. Compl. ¶¶ 3-5.) Plaintiff alleges that Mr. Faddish's death from mesothelioma was related to asbestos-containing turbines manufactured by CBS Corporation ("Westinghouse")[2] used aboard the U.S.S. Essex. (Id.)

Westinghouse moved for summary judgment on three grounds. First, Westinghouse asserted that there is no genuine issue of material fact as to whether Warren products were a substantial contributing factor to Mr. Faddish's injuries.[3] (Def.'s Mot. Summ. J., doc. no. 104, at 12.) Second, Westinghouse asserts

---

[2] CBS Corporation (a Delaware corporation f/k/a Viacom, Inc.) is a successor by merger to CBS Corporation (a Pennsylvania corporation f/k/a Westinghouse Electric Corporation).

[3] John Faddish is the injured party. He is deceased and his wife Ruth Faddish has been appointed executrix of his estate and has been substituted as the named plaintiff in this case.

that it did not design, manufacture, supply, or install the asbestos-containing products at issue and that as a "bare metal" supplier cannot be held liable under Florida law. (Id. at 19.) Second, Westinghouse argues that the United States Navy was a sophisticated user of asbestos, thereby breaking the causal chain between Westinghouse and Mr. Faddish's injuries.

The Panel issued an R&R denying Westinghouse's Motion for Summary Judgment, finding that the combination of decendent's testimony and Plaintiff's expert witness could lead a reasonable jury to find that Westinghouse products were a substantial contributing cause to Mr. Faddish's injuries. (R&R, doc. no. 167, at 9.)

Defendant Westinghouse raises two objections to the Panel's R&R. First, it objects to the Panel's finding that there remains a genuine issue of material fact as to whether the exposure at issue is attributable to Westinghouse products. (Def.'s Objects., doc. no. 179, at 1.) Second, Westinghouse objects to the Panel's finding that the record supported a finding that Westinghouse products were the "but for" cause of the injury, as required by Florida law. (Id.)

II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 636(b)(1)(C), "[a] judge of the

Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

When evaluating a motion for summary judgment, Federal Rule of Civil Procedure 56 provides that the Court must grant judgment in favor of the moving party when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact . . . ." Fed. R. Civ. P. 56(c)(2). A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" when there is sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. Id. at 248-49. "In considering the evidence, the court should draw all reasonable inferences against the moving party." El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by showing-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case' when the

4

nonmoving party bears the ultimate burden of proof." Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004) (quoting Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001)).  Once the moving party has thus discharged its burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in [Rule 56]--set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

III. DISCUSSION

Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court must apply a de novo standard of review to the portions of the R&R that Westinghouse has objected to.

    A.  Objections to the Panel's Report and Recommendations on the Issue of Causation

Defendant argues that the record is devoid of any evidence that Mr. Faddish inhaled asbestos fibers from Westinghouse-manufactured products.  (Def.'s Objects., doc. no. 179 at 3.) Rather, the record merely indicates that he inhaled asbestos that had settled on Westinghouse equipment from overhead pipes.  (Id. at 2.)  Additionally, Westinghouse argues that the Panel failed to correctly apply Florida law, which Defendant argues requires a plaintiff to show that asbestos exposure from Defendant's

5

products (1) was sufficient, standing alone, to cause the injury or (2) that "but for" the Westinghouse-attributable exposure, the injury would not have occurred. (Id. at 5; citing Reaves v. Armstrong World Indus., 569 So.2d 1307, 1309 (Fla. App. 4th Dist. 1990), review denied, 581 So.2d 166 (Fla. 1991)).

The Florida Supreme Court has not articulated a standard of causation necessary to survive summary judgment in asbestos cases, and lower Florida courts have rejected the "frequency, regularity, and proximity" test, which has been adopted in many courts throughout the nation. Rather, under Florida law, a plaintiff must simply show that a defendant's product was a "substantial contributing factor" to the injury that occurred to bring a claim in Florida courts. (Asbestos and Silica Compensation Fairness Act, FLA. STAT. § 774.205). If defendant's products are identified in a given case, "traditional" methods of finding causation apply. Celotex Corp. v. Copeland, 471 So. 2d 533, 536 (Fla. 1985). The traditional method of establishing causation in negligence cases requires the plaintiff to "introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result." Gooding v. University Hospital Bldg, Inc., 445 So. 2d 1015 (Fl. 1984)(quoting Prosser, LAW OF TORTS § 41 (4th Ed. 1971)).

Therefore, to survive summary judgment under Florida law, a

plaintiff must simply raise a genuine issue of material fact as to whether defendant's failure to warn about the hazards of asbestos was "a substantial factor" in bringing about plaintiff's asbestos-related injury.  See id.

In the instant case, Mr. Faddish testified that he was responsible for wiping dust from the outside of the turbines, generators, steam lines, pumps and condensors. (Faddish Video Dep. at 26:23; 30:10-31:3; 33:8-11; 34:20-35:8; 39:3-16; 40:13-19.)  The turbines were externally insulated.  (Id. at 30:4-12.) Mr. Faddish recalled performing "instructional maintenance" on the turbines, under the supervision of his superiors.  (Id. at 25:21-23, 32:12-25; 33:11; 35:21-36:22.)  This included repacking pumps and replacing gaskets on the pumps. (Id. at 32:16-15; 35:21-36:22.)  Mr. Faddish also testified that he was involved in replacing gasket material on steam generators.  (Id. at 36:23-24.)

Plaintiff's expert, Arnold P. Moore, testified that this portion of Mr. Faddish's testimony refers to Westinghouse propulsion turbines.  (Dep. of Arnold P. Moore, doc. no. 131-8, at 128:6-10.)  Further, Mr. Moore's deposition testimony provides the link between Mr. Faddish's testimony regarding maintenance work and Westinghouse-manufactured booster pumps and the main condenser circulating pumps.  (Dep. of Arnold P. Moore, doc. no. 131-8, at 125:6-9, 20-24.)

7

The combination of Mr. Faddish's testimony regarding asbestos exposure from the cleaning and maintenance work he performed on the U.S.S. Essex, combined with Mr. Moore's testimony regarding the specific Westinghouse products aboard the U.S.S. Essex is sufficient to raise a question for a jury to decide. Plaintiff has raised a genuine issue of material fact as to whether Westinghouse products were a substantial cause of Mr. Faddish's asbestos-related injuries under Federal Rule of Civil Procedure 56(c). Therefore, Defendant's objections as to product identification are overruled.

B. Defendant's Additional Grounds for Summary Judgment

The question remains whether Defendant can be held liable for asbestos-containing replacement components and external insulation that were applied to its products after manufacture. This issue was not before the Panel, and is addressed below.

1. The Bare Metal Defense

Defendant asserts that it cannot be held liable for products that it did not manufacture or supply. While many courts hold that it is the responsibility of the manufacturer of the finished product to provide warnings, other courts find that the duty to warn remains when the manufacturer is aware of the risk that its product will pose once incorporated with the defective product. In the instant case, Defendant argues that it cannot be held

8

liable because it did not manufacture or design asbestos-containing products. Rather, asbestos replacement asbestos parts and external asbestos insulation was added to Defendant's products after installation on the U.S.S. Essex.

The Florida Supreme Court has not addressed the issue of whether a component manufacturer can be held liable for harm caused by a finished product. Defendant urges the Court to look outside of Florida for support that the bare metal defense can, and should, be applied in this case. (Def.'s Mot. Summ. J., doc. no. 104 at 19-25).

Florida appellate courts have taken the approach that a component manufacturer can be held liable for a finished product in certain circumstances. For example, in <u>Scheman-Gonzalez v. Saber Manufacturing Company</u> the court held that the manufacturer of a wheel rim (Titan), which was incorporated into defendant Saber's wheel, could be held liable for injuries occurring when a tire mounted on the wheel exploded. 816 So. 2d 1133 (Fl. Dist. App. Ct. 2002). Titan argued that it was merely a component manufacturer, but the court found a remaining question of fact as to whether Titan was required to warn plaintiff of the danger, whether the warning provided was adequate, and whether Titan's failure was the proximate cause of plaintiff's injuries. <u>Id.</u> at 1141.

However, in <u>Kohler v. Marcotte</u>, the court held that

defendant, a mass-producer of engines, could not be held liable for harm caused by a lawnmower which incorporated one of its engines. 907 So. 2d 596 (Fl. Dist. App. Ct. 2005). The court determined that Kohler was entitled to a directed verdict in their favor, as Kohler did not "review the design of the lawn mower for safety." Id. at 598. The Kohler court relied on the Third Restatement of Torts, § 5(b)(1) (1997) which states that a non-defective component provider is subject to liability only if it "substantially participates in the integration of the component into the design." Id. The court emphasized that Kohler produced a "generic" engine that had many potential uses and incorporations. Id. at 599; see also Ford v. International Harvester Co., 430 So. 2d 912 (Fl. Dist. App. Ct. 1983)(holding that whether a component manufacturer is liable turns on trade usage and custom, relative expertise of the supplier and manufacturer, and practicability of the supplier addressing the safety concerns).

Plaintiffs in the instant case point to Florida authority establishing that parties in the chain of distribution have a duty to warn end users of foreseeable or contemplated users of their products. McConnell, 937 So. 2d at 154. Plaintiffs assert that, because Defendant's product required insulation to operate safely and because expert testimony indicates that "asbestos was the primary material used for - particularly for insulation

10

during the war," Defendant had a duty to warn the end user of the hazards of asbestos. (Pl.'s Resp., doc. no 131 at 14; Dep. of Arnold Moore, doc. no. 131-5, at 150:3-7.) Plaintiffs have produced evidence that Defendant was aware that asbestos insulation would be applied, and that Naval Specifications included a choice between using asbestos and non-asbestos gaskets and packing. (Id.; Moore Dep., doc. no. 131-5, at 171:5-9.)

Rather than engage in the risky exercise of predicting whether the Florida Supreme Court would adopt the approach of Kohler v. Marcotte and Scheman-Gonzalez, this Court finds that this issue is best left to the transferee court, with superior expertise and familiarity in the application of Florida law.[4]

Therefore, summary judgment on this ground is denied without prejudice, with leave to file in the transferor court.

### 2. The Sophisticated Purchaser Defense

---

[4] A multidistrict litigation transferee court has "authority to dispose of a cases on the merits – for example, by ruling on motions for summary judgment." MANUAL FOR COMPLEX LITIGATION § 22.36 (4th ed. 2010) (citing In re Temporomandibular Joint (TMJ) Prods. Liab. Litig., 113 F.3d 1484, 1488 (8th Cir. 1997)). Although the MDL court has such authority, and in the appropriate case the exercise of such authority generally promotes the multidistrict litigation goals of efficiency and economy, there are cases where ruling on summary judgment by the transferee court would not advance the litigation or serve a useful purpose. Id. (citing In Re Orthopedic Bone Screw Prods. Liab. Litig., MDL No. 1014, 1997 WL 109595 at *2 (E.D. Pa. Mar. 7, 1997)). This appears to be such a case, as Florida law is not settled on the merits of Westinghouse's "bare metal" defense.

Additionally, Defendant argues that, under Florida law, it is not liable for asbestos-related injuries because the United States Navy knew of the risks of asbestos. This so-called "sophisticated user defense" arises under §388 of the Second Restatement of Torts, which has been adopted by Florida. Tampa Drug Co. v. Wait, 103 So. 2d 603 (Fla. 1958); McConnell v. Union Carbide Corporation, 937 So. 2d 148 (Fl. Dist. App. Ct. 2006).

Under the Second Restatement's approach, whether a sophisticated purchaser discharges a manufacturer's duty to warn depends on numerous factors, including (1) the dangerous nature of the product (2) the form in which it is used (3) the type of warnings given (4) the burden imposed and (5) the likelihood that the warnings will be adequately communicated to the foreseeable users of the product. Union Carbide Corporation v. Kavanaugh, 879 So. 2d 42, 45 (Fl. Dist. App. Ct. 2004).

In the asbestos context, Florida appellate courts have held that, because of the "intrinsically dangerous" nature of asbestos, the supplier of an asbestos-containing product may not be able to rely on its intermediaries to pass along a warning. McConnell, 937 So. 2d at 149. In McConnell, the court held that "[t]here is almost no burden in imposing on [suppliers of asbestos] the duty of contractually requiring its 'learned intermediaries' . . . to affix to the end product an indelible warning of the existence of asbestos in it and the very serious

dangerous in using it without proper precautions." 937 So. 2d at 155. Instead, juries should be instructed to take into account the balancing test employed by the Second Restatement, and it is not an automatic bar to liability that an intermediary knew of the hazards of a product.[5] Id. at 156; see also Kavanaugh, 879 So. 2d 42, 45 (finding that "because [asbestos supplier] did not take reasonable precautions under the circumstances, its duty to warn did not stop with [the intermediary], but continued to the ultimate user."); see also Sowell v. American Cyanamid Co., 888 F.2d 802 (11th Cir. 1989)(holding that defendant was not absolved of liability for an exploding tank supplied to the United States Navy, even though defendant gave the Navy a manual; a reasonable jury could conclude that this was insufficient to protect end users).

Generally speaking, under Florida law, "[q]uestions of whether a product is inherently dangerous or has dangerous propensities and whether a manufacturer or distributor has a duty to warn under the circumstances are usually questions of fact for the jury." Advance Chemical Co. V. Harter, 478 So.2d 444-48 (Fl.

---

[5] The Second Restatment of Torts, § 388, comment n makes clear that the degree of dangerousness of a product is an essential part of whether the duty to warn continues to the end user. The comment states, "[I]t may be reasonable to require those who supply through others chattels which if ignorantly used involve grave risk of serious harm to those who use them . . . to take precautions to bring the information home to the users of such chattels which it would be unreasonable to demand were the chattels of a less dangerous character."

Dist. Ap. Ct. 1985).

Defendants point to Florida Supreme Court precedent holding that it is "contrary to public policy as well as good common sense" to hold a manufacturer strictly liable when the defect is known to an intermediary. Chadbourne v. Vaughn, 491 So. 2d 551 (Fl. 1986). In Chadbourne, the Supreme Court of Florida declined to hold a roadway constructor liable when "a highly knowledgeable and sophisticated purchaser [the Florida Department of Transportation] extensively tested and examined the finished roadway consistent with state procedures." Id. at 553. The Court found that, under these circumstances, the paver of the road was not "proximately responsible" for plaintiff's injuries. Id.

Chadbourne is distinguishable from the instant case on at least two grounds. One, it was a design defect, not a failure to warn case and two, the Florida Supreme Court determined that the constructed roadway "was not a product for purposes of the application of strict liability." Id. at 553. In the instant case, based on the decisions in McConnell v. Union Carbide Corporation and Union Carbide Corporation v. Kavanaugh, the question presented is whether a sophisticated purchaser of an inherently dangerous product cuts off the supplier's duty to warn end users of the hazards.

Under the circumstances present here, the weight of

14

authority from Florida courts indicates that whether a manufacturer's duty to warn is discharged by an intermediary is a factual question for the jury, and involves a weighing of numerous factors.  Therefore, summary judgment is not appropriate.

IV. Conclusion

Defendant's objections to the Panel's Report and Recommendation regarding the lack of evidence implicating Westinghouse-manufactured asbestos products are overruled.  There remains a genuine issue of material fact as to whether Westinghouse manufactured or supplied the internal asbestos gaskets and packing to which Mr. Faddish was exposed.

However, the issue of whether Westinghouse can be held liable for replacement asbestos packing and gaskets and external asbestos insulation applied to its products is appropriate for adjudication in the transferor court.

Finally, the transferor court finds that, if Westinghouse can be held liable for replacement and additional asbestos components of its products, there remains a genuine issue of material fact as to whether Westinghouse's duty to warn was absolved by the United States Navy.

An appropriate order follows.